SOUTH CAROLINA INSURANCE COMPANY, a South Carolina corporation, Defendant Below, Appellant, v. ATLANTIC TRANSPORT, INC., a Delaware corporation, and SYNVAR CORPORATION, a Delaware corporation, Plaintiff Below, Appellee.

(*June* 7, 1961.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Jackson W. Raysor* (of Tunnell and Raysor) for appellant.

*David Snellenburg, II* (of Killoran and Van Brunt) for appellees.

Supreme Court of the State of Delaware, No. 5, 1961.

SOUTHERLAND, C. J.:

This is a suit on an automobile physical damage policy. The insured seeks recovery for the value of certain tires, tubes, and other accessories claimed to have been stolen from three of its automobile trailers.

The facts are as follows:

On September 2, 1957, South Carolina Insurance Company issued its policy covering certain automobile trucks of the plaintiff, Atlantic Transport, Inc. The policy coverage included "loss of or damage to the automobile * * * caused by theft, larceny, robbery, or pilferage."

The insurance was solicited from Mr. John Cooper, Jr., of Lawson Cooper, Inc., Wilmington insurance agents, with whom Atlantic carried its insurance. This agency brokered the insurance with C. E. Wood of Milford, Delaware, agent for South Carolina, who countersigned the policy.

At the time here important—about June to September, 1958, inclusive—the trailers were not in actual use. They were stored on an open lot on South Heald Street, near but not within the Wilmington city limits.

At some time prior to September 16, 1958—the date cannot be accurately fixed—some tires, tubes, and other accessories were stolen from three of the trailers.

At some time prior to September 16, 1958—once again the date is uncertain—the loss was discovered by Irving Sigmond, Atlantic's General Manager.

Whether or not timely notice of the loss was given to the company is disputed. The facts will be set forth hereafter. In any event notice was given to Cooper not later than November 5th and he in turn sent notice of the loss to Mr. Wood. Thereafter the loss was referred for investigation to the office of Pierce E. Tweed, Jr., an independent adjuster. Mr. Markley of that office interviewed Mr. Sigmond on November 24th and took a statement from him which will be referred to later. The company rejected the claim, and on January 2, 1959, Mr. Tweed advised Mr. Lowe, President of Atlantic Transport, that liability was denied. No proof of loss was ever filed.

Suit was brought and the case was tried before the court without a jury.

The company defended on the grounds (1) that timely notice of loss was not given to the company; (2) that notice of loss had not been given to the police; and (3) that no proof of loss was filed.

The court ruled that Atlantic had made out a *prima facie* case and gave judgment for Atlantic. A motion for a new trial on the grounds raised at the trial was denied. The company appeals.

In this Court the company renews the three points made below. It also urges a fourth point: that there was no proof that the loss occurred while the policy was in force. This point appears to be well taken. Atlantic was required to prove that the loss occurred on or before September 2, 1958, and this it did not do. However, we note that the company

never raised the question below, not even in its motion for a new trial. Moreover, the colloquy between the court and counsel at the beginning of the trial would have justified the court in assuming that the time of the occurrence of the loss was not in issue. Accordingly, the point will not be considered here.

The two points relating to notice of loss to the company and to the police may conveniently be considered together.

Paragraph 1 of the policy conditions provides in part:

"When loss occurs the insured shall: * * * give notice thereof as soon as practicable to the company or any of its authorized agents and also, in the event of theft, larceny, robbery or pilferage, to the police * * *."

The important testimony respecting the giving of the required notices is that of Mr. John Cooper, of the Lawson-Cooper insurance agency. His records show that on November 5, 1958, he sent to Mr. Wood, the Company's Delaware agent, notice of a loss said to have occurred some time during July or August, amounting to $1,705. He testified that on that date Mrs. Mobray of his office took the telephone report of loss and immediately made out the formal notice, in accordance with the office practice. He said that no earlier telephone notice of the loss had been received by him or by his office employees. Asked by the court whether a report might have been received and not written down or lost, he said: "I would hate to think of it, but it is possible."

He further testified that he had examined his office records and found no record of any other telephone calls before November 5th. His records did show, however, that Sigmond had called him November 19th to inquire about the status of the matter.

As to the notice to the police, the copy of Mrs. Mobray's written notice of loss contains the entry:

"Mr. Sigmond, of assured company, is calling police."

The present tense is of significance.

Mr. Sigmond, Atlantic's general manager, who discovered the loss, was called to testify respecting the required notices. His testimony is too long to quote in full. A careful reading of it shows that at the time he testified he had no reliable recollection of the time when he gave the notice of loss. He stated more than once that he "assumed" he had given notice about the time of discovery of the loss. On one occasion, when the trial judge told him that assumptions would not do, he said he had called Lawson-Cooper's office two or three times, but again he did not fix the date. He did recall talking to Mrs. Mobray. He said he did not report to her the items missing, yet it is clear that he did so, because they are listed on the loss report. He admitted on cross-examination that he could not swear that he had called Mr. Cooper prior to November 5th. Again pressed by the trial judge he said he could swear that he talked to Mrs. Mobray, but could "only assume" on what date. Subsequently, he reiterated his testimony that he could only "assume".

On the matter of notice to the police he was equally vague.

Apparently referring to the period after the discovery of the loss, he testified that a strike was on and Atlantic was having trouble with its drivers. He called the police to tell them to get some one to the plant, and also reported the theft. After some conversation he was informed that the place of the theft was out of the jurisdiction of the city police. He never called the state police.

On November 24th the Company's adjuster took from Sigmond the statement above referred to. Sigmond said that he had not immediately reported the theft to the police because he did not know that it was necessary. When he reported the theft to Cooper's office they suggested he report it

to the police and he did so; but that was done, he said, a month after he reported the loss to Cooper. If this testimony is accepted, the notice was clearly not given "as soon as practicable". Moreover, the language of the notice of loss—"Mr. Sigmond * * * is calling police" indicates that the police call was made on or about November 5th. On May 20, 1959, he repudiated the November statement and said that he reported the theft to the police when he reported the loss to Cooper. This "repudiation" emphasizes the unreliability of his testimony.

Enough has been said to show that Sigmond never testified positively to compliance with the notice provisions of the policy. If his testimony were merely self-contradictory in part, it could be said that the trial court's finding of a *prima facie* case resolved a conflict between Cooper's testimony and Sigmond's and that therefore we should sustain his finding. This is Atlantic's contention.

But the difficulty is much more serious than that. Not only is there no positive testimony that the required notices were given within a reasonable time, but the only positive testimony about the matter—Cooper's—and the only documentary evidence—the notice of loss—establish clearly that the notices were never given until November 5th.

Of course, as Mr. Cooper admitted, it is "possible" that an experienced and responsible insurance agency may lose or forget about a notice of loss. But this is highly unlikely. In the absence of any positive testimony of notice such a possibility cannot be given any weight. To do so would make the verdict rest on speculation.

In these circumstances Sigmond's vague "assumption" of a prompt call to Cooper cannot constitute the "competent evidence" which is required to sustain the court's verdict. *Cf. Mulco v. Black*, 11 *Terry* (50 *Del.*) 246, 127 *A.* 2d

851, 856. Indeed, the trial judge himself commented that Sigmond's testimony was "not reliable wholly".

█ It is also to be noted that Atlantic does not even contend that Sigmond ever reported the theft to the state police, the organization with jurisdiction to investigate the theft. This was in itself a breach of the policy condition. Obviously, the notice required must be to the police department with power to act.

█ We must bear in mind that in a case of insurance against theft the requirements that prompt notice be given to the insurer and to the police are of very real importance to the company. The prompt recovery of the articles may dispense with payment of the loss, and any recovery will protect the company's right of salvage. Moreover, prompt notice to the police is obviously a protection against fraudulent claims.

It is our conclusion that Atlantic did not produce any competent evidence of the giving of the required notices in accordance with the policy conditions.

This conclusion makes it unnecessary to consider the company's contention that even if notice of loss was given to Cooper promptly upon discovery of the loss, it was not sufficient because Cooper was merely a broker. It is also unnecessary to consider the contentions respecting the proof of loss.

It follows that the judgment below must be reversed and judgment entered for the defendant.